IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-199-M-BM

| | | |
|---|---|---|
| MIMI COLLIE,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **MEMORANDUM AND RECOMMENDATION** |

Plaintiff Mimi Collie ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and supplemental security income ("SSI"). This matter is before the court on Plaintiff's brief [DE-15] ("Pl.'s Brief") seeking judgment in her favor, Defendant's responsive brief [DE-17] ("Def.'s Brief") in opposition, and Plaintiff's reply brief [DE-18] ("Pl.'s Reply"). The parties have fully briefed this matter pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The briefs were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1). Having reviewed and considered the record, the administrative transcript, the briefs submitted by the parties, and the applicable law, it is recommended that Plaintiff's Brief [DE-15] be allowed, Defendant's Brief [DE-17] be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and SSI on September 23, 2021, alleging disability beginning August 1, 2021. Transcript of Proceedings ("Tr.") 70, 204-

207. Her claim was denied initially. Tr. 70-85, 101-05. Plaintiff filed a request for reconsideration (Tr. 111), and was denied upon reconsideration on October 31, 2022. Tr. 86-100, 112-15. On January 16, 2023, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). Tr. 139-57. A hearing before the ALJ was held on July 3, 2023, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. Tr. 38-69. On January 30, 2024, the ALJ issued a decision denying Plaintiff's request for benefits. Tr. 15-37.

On March 27, 2024, Plaintiff requested a review of the ALJ's decision by the Appeals Council. Tr. 199-201. On February 14, 2025, the Appeals Council denied Plaintiff's request for review. Tr. 1-5. Plaintiff then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . [and] somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the

[Commissioner].” *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

**III. DISABILITY EVALUATION PROCESS**

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation

resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(4).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 31. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful employment since September 23, 2021, the alleged onset date. Tr. 20.

Next, at step two, the ALJ determined Plaintiff had the following severe impairments: post-traumatic stress disorder; major depressive disorder; generalized anxiety disorder; borderline personality disorder; morbid obesity; mild degenerative disc disease of the lumbar spine; degenerative changes of the right knee; angina pectoris; migraine; and asthma. Tr. 20-21. The ALJ also found Plaintiff had the following non-severe impairments of glaucoma and dry eye. Tr. 21. At step three, however, the ALJ concluded these impairments, both physical and mental, were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 21.

Applying the technique prescribed by the regulations, the ALJ found that Plaintiff's mental impairments have resulted in moderate limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself. Tr. 23-24.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the

ability to perform sedentary work[1] with the following limitations:

> [S]he must be able to use a cane for ambulation. She can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl. She can occasionally work around unprotected heights, moving mechanical parts, weather, humidity, wetness, dust, odors, fumes, and other pulmonary irritants or extreme heat. She requires an environment with maximum noise level of "moderate" as that is defined in the SCO (for migraine prevention). She can understand, remember, and carry out simple tasks and instructions and can use judgment to make simple work-related decisions. She can tolerate frequently interaction with supervisors and should have only occasional interaction with coworkers and the general public. She can tolerate occasional changes to the simple work described herein.

Tr. 24.

In making this assessment, the ALJ found Plaintiff's statements about her limitations not entirely consistent with the medical evidence and other evidence in the record. Tr. 25.

At step four, the ALJ concluded Plaintiff did not have any past relevant work. Tr. 29. Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. Tr. 30.

## V. OVERVIEW OF PLAINTIFF'S CONTENTIONS

In this case, Plaintiff alleges the ALJ erred by: (1) "improperly evaluat[ing] the opinion evidence" that "[support] limitations greater that those found by the ALJ"; and (2) "fail[ing] to

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. "Sitting" generally totals about 6 hours of an 8-hour workday. *Id.* A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id*.

provide adequate reasons for her evaluation of subjective complaints." Pl.'s Brief [DE-15] at 3.[2] Each will be discussed below.

## VI. DISCUSSION

### A. Evaluation of Opinion Evidence

In this case, Plaintiff alleges the ALJ erred by "improperly evaluating the opinion evidence." Pl.'s Brief [DE-15] at 3. Specifically, Plaintiff contends that the ALJ erred by failing to evaluate the finding of Selvaratnam Sinna, MD ("Dr. Sinna"), that Plaintiff had a New York Heart Association ("NYHA") Class III heart disease, as a medical opinion pursuant to 20 C.F.R. §404.1520c. *Id.* at 4. The Commissioner counters that "[t]he ALJ properly evaluated the evidence of Plaintiff's heart impairment, including her NYHA Class III rating." Def.'s Brief [DE-17] at 8.

The applicable regulation regarding the evaluation of medical source opinions in Plaintiff's case is 20 C.F.R. § 416.920c, titled "*How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017*." Under 20 C.F.R. § 416.920c, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, the regulations provide five factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings, the five factors being: "(1) Supportability . . . (2) Consistency . . . (3) Relationship with the claimant . . . (4) Specialization . . . [and] (5) Other factors . . . that tend to support or contradict a medical opinion or prior administrative finding. *Id.* §§ 416.920c(c)(1)-(5). The regulations specify that supportability and consistency are the most important factors in the evaluation. *Id.* §§

[2] Except for citations to the Transcript of Proceedings ("Tr."), all citations to documents using the docket entry number [DE-] provided in the court's docket will specify the page number automatically assigned by the CM/ECF system, rather than the page number, if any, specified in the original document.

416.920c(a).

The regulations also require that an ALJ "articulate how [they] considered the medical opinions and prior administrative medical findings in [the] case record." *Id.* In particular, the ALJ must explain how the factors of supportability and consistency were considered for a medical source's medical opinions. *Id.* § 404.1520c(b)(2). The ALJ may, but is not required to, explain the remaining factors. *Id.* Additionally, among the articulation requirements is the requirement that the ALJ engage in a source-level articulation. *Id.* § 404.1520c(b)(1). While the ALJ does not need to articulate how they considered the § 404.1520c(c) factors for each individual medical opinion, the ALJ must articulate how they considered the factors for each medical source that has provided a medical opinion(s) or prior administrative medical finding(s). *Id.*

The regulations define a "medical opinion" as a "statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in . . . abilities" to adapt to "physical demands of work activities, . . . mental demands of work activities, . . . and . . . environmental conditions." 20 C.F.R. § 404.913(a)(2).

Here, when summarizing the relevant medical evidence, the ALJ noted that in June 2021, Plaintiff was "seen by cardiology with complaints of shortness of breath on exertion"; Plaintiff "indicated that she had been experiencing chest pain since 2017 and that it was worsening"; and "[s]he was noted as having NYHA class III heart disease." Tr. 26. The ALJ also observed that "[a]t that time, [Plaintiff] was working at Wendy's and requested a note for restrictions that she can only work 4 hours per day[,] . . . [a]n EKG showed sinus rhythm without ischemic changes[,] . . . [Plaintiff] was diagnosed with precordial pain and was prescribed nitroglycerin." *Id.* Plaintiff was allegedly "told to take a maximum of three pill [sic] and then she needed to go to the

emergency room." *Id.*

As noted above, the disagreement centers around (i) whether an NYHA classification qualifies as a medical opinion, *see* Pl.'s Brief [DE-15] at 4-5; Def.'s Brief [DE-17] at 11, and (ii) whether any failure to discuss it was harmless error, *see* Def.'s Brief [DE-17] at 11; Pl.'s Reply [DE-18] at 4.

Courts within this circuit diverge on whether an NYHA classification should be treated as a medical opinion by the ALJ. *Compare Elmore v. Colvin*, No. 1:15-cv-759, 2016 U.S. Dist. LEXIS 79710, at *16-18 (M.D.N.C. June 20, 2016) (finding an NYHA class III rating does not "directly correlate[] to specific loss of function, per se" and does not "denote what function limitations are caused by Plaintiff's heart condition"), *adopted* (M.D.N.C. July 13, 2016); *Daywalt v. Kijakazi*, No. 1:20-cv-277, 2021 U.S. Dist. LEXIS 156602, at *31 (M.D.N.C. Aug. 19, 2021) (where "Plaintiff's attempt to interpret the NYHA Class III notation as a medical opinion" failed because her physician "neither provided any commentary on the continuing validity of Plaintiff's NYHA classification, nor offered any work-related restrictions that such a classification would entail"), *adopted* (M.D.N.C. Sept. 8, 2021); *with Cochran v. Kijakazi*, No. 1:21-cv-143, 2022 U.S. Dist. LEXIS 160936, at *14 (W.D.N.C. Sept. 7, 2022) ("As the ALJ does not acknowledge Dr. Johnston's opinion that the Plaintiff's coronary artery disease is classified as a NYHA Functional Classification III, the Court is 'left to guess' as to whether the ALJ considered this portion of Dr. Johnston's opinion when evaluating the opinion and formulating the Plaintiff's RFC, and if he did consider it, how he considered it."); *Smith v. Kijakazi*, No. 4:21-cv-1785, 2022 U.S. Dist. LEXIS 55841, at *19, 25 n.4 (D.S.C. Mar. 9, 2022) ("[I]t appears in the context of the instant case that the NYHA classification with its corresponding description may relate to a statement of restrictions in ability to perform physical demands, which would meet the definition of an opinion under 20

C.F.R. § 404.1513(a)(2)(i).") (collecting cases), *adopted by*, 2022 U.S. Dist. LEXIS 55314 (D.S.C. Mar. 28, 2022).

Because the undersigned recommends remand for the reasons stated below, the undersigned need not determine whether an ALJ errs in neglecting to discuss NYHA classifications as medical opinions. On remand, the ALJ should consider Plaintiff's arguments regarding the NYHA classification. *See* Pl.'s Brief [DE-15] at 4-5.

**B. Evaluation of Subjective Complaints**

Plaintiff alleges the ALJ failed "to provide adequate reasons for his evaluation of subjective complaints." *Id.* at 5. Specifically, Plaintiff argues that "the ALJ's summary simply sets out a mix of positive and negative findings and indicated that those findings are not consistent with the alleged incapacitating impairments[, b]ut the ALJ failed to provide any resolution of the positive and negative findings." *Id.* at 5-6.

The Commissioner argues that "substantial evidence supports the ALJ's determination that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence in the record." Def.'s Brief [DE-17] at 14 (citing Tr. 24-29).

"A Social Security claimant's RFC represents 'the most [she] can still do despite [her] limitations.'" *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (alterations in original) (quoting 20 C.F.R. § 416.945(a)(1)). In assessing an individual's RFC, an ALJ considers that person's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). Further, "the ALJ must consider all of the claimant's medically determinable impairments of which the ALJ is aware, including those not labeled severe at step two." *Shinaberry v. Saul*, 952 F.3d 113, 119 (4th Cir. 2020) (quoting *Monroe v. Colvin*, 826

F.3d 176, 179 (4th Cir. 2016)).

"[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe*, 826 F.3d at 189 (quoting *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)). "[T]he ALJ's logical explanation[] is just as important as the other two [components] . . . [and] our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas*, 916 F.3d at 311 (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). The ALJ is not required to discuss every piece of evidence in the record. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citations omitted). Yet where a court is "left to guess about how the ALJ arrived at his conclusions on [a claimant's] ability to perform relevant functions . . . , remand is necessary." *Mascio*, 780 F.3d at 637.

The Fourth Circuit has held in *Oakes v. Kijakazi* that if a claimant's "medically determinable impairment . . . could reasonably be expected to produce [Plaintiff's] alleged symptoms," *cf.* 28 C.F.R. § 1529(c), a claimant may "rely exclusively on subjective evidence to prove that [his] symptoms [are] so continuous and/or severe that they prevented [him] from working." *Oakes v. Kijakazi*, 70 F.4th 207, 215 (4th Cir. 2023) (second, third, and fourth alterations in original) (quoting *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 96 (4th Cir. 2020). The Fourth Circuit went on to note that "[s]eparate and apart from [her] literal mobility, [Plaintiff] can qualify for benefits if [s]he is in sufficient pain [and t]he ALJ failed to meaningfully address this theory of qualification such that this Court may engage in judicial review." *Id.* at 216.

Accordingly, while *contradictory* medical or other evidence may discredit Plaintiff's

subjective statements regarding the limiting effects of her pain, a *mere absence* of medical evidence cannot, provided that objective medical evidence confirms that Plaintiff has a condition reasonably likely to cause the pain claimed. *See Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 360 (4th Cir. 2023) ("[B]ecause pain is subjective [it] cannot always be confirmed by objective indicia[.]") (second alteration in original) (quoting *Craig*, 76 F.3d at 595); *see also Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006) ("Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, *i.e.*, that his pain is so continuous and/or so severe that it prevents him from working a full eight hour day.").

Here, the ALJ provided a lengthy summary of Plaintiff's testimony from the administrative hearing. Tr. 25. The ALJ noted that Plaintiff "work[s] part-time at Wendy's at times" and that "in August 2021, she began having trouble walking." *Id.* The ALJ further considered Plaintiff's report that "when she tries to work lately, her boss ends up sending her home" and that "[s]he tells her boss she will try [to come in to work], but she ends up not being able to come in because of constant migraines and tremors in her hands now." *Id.* The ALJ summarized Plaintiff's testimony that "[s]he has leg swelling if she is on her feet a long time[, and s]he has to sit down and put her feet up on the chair, [and] she uses it every day because she's on her feet a lot with her daughter who is about to be three years old." *Id.* The ALJ noted Plaintiff saying that "[s]he has back pain and had an MRI in July 2023[,] . . . [s]he can sit about 25-30 minute before back pain sets in[, and s]he can stand 15 minutes maximum." *Id.* The ALJ also considered Plaintiff's testimony that "she has constant headaches from her ex beating her in the head[,] . . . [t]hey are constant now . . . [s]he's been on three different medications and still has them daily." *Id.*

The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 25.

The ALJ then summarized Plaintiff's medical history. Tr. 26-29. The medical records include both findings from consultative examinations as well as records and opinions by treating physicians. *See id.* The ALJ's summary documents several recurrent conditions and reported limitations, including, *inter alia*, obesity; chronic back pain and degenerative disease in parts of the spine; leg, knee and foot swelling or pain, as well as evidence of mild degenerative change in the knee; difficulty walking and standing; shortness of breath; asthma; migraine headaches; chest pain and angina, and various psychological symptoms, including depression and anxiety. *See id.* The ALJ notes various x-ray and MRI results, some of which documented mild degeneration in Plaintiff's knee and spine. *See id.*

The ALJ considered various reports documenting Plaintiff's headaches, including a physical consultative examination by Antonio Carbonell, M.D. from a prior filing in June 2017 where Plaintiff reported "having a migraine at least twice a week that lasted up to 3 days" (Tr. 26); an evaluation from August 2021 diagnosing Plaintiff "with mixed type migraine headaches with nausea, vomiting, and dizziness" and prescribing Topamax; and a June 2023 physical examination that documented Plaintiff's complaint that "the Fioricet prescribed for her headaches was too strong and she wanted to change medications" (Tr. 27).

The ALJ assessed the persuasiveness of various medical opinions explaining how certain of these supported her findings that Plaintiff would "require limited standing/walking and would require no more than occasional postural movements due to her shortness of breath and pain complaints." *See, e.g.*, Tr. 28. The ALJ explained how certain psychological evaluations supported

her findings that Plaintiff "received limited treatment for her mental health conditions during the period in question," which indicates that Plaintiff "would be able to perform simple tasks in a stable environment with limited social interaction as specifically described in the [RFC]." *Id.*

The ALJ's summary highlights various positive findings including observations of 5/5 bilateral muscle strength; normal ambulation; full orientation, intact memory; adequate attention and concentration; and the ability "to complete daily living skills appropriate to her age and developmental level" and functional limitations assessed by various consultative examiners that exceeded the limitations alleged by Plaintiff, including specifically her claims that she "could only sit for 25-30 minute[s] before back pain sets in[, and] can stand 15 minutes maximum." Tr. 25.

Plaintiff argues that "[t]he ALJ's explanation fails to adequately support the ALJ's conclusion[, and] the ALJ's summary simply sets out a mix of positive and negative findings and indicated that those findings are not consistent with the alleged incapacitating impairments." Pl.'s Brief [DE-15] at 5-6. Pursuant to an applicable Social Security Ruling:

> it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

S.S.R. 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017).

Plaintiff contends that "[i]n finding simply that [Plaintiff's] symptoms were not supported – without specifying what records he is referring to and showing how he reconciled the conflicting findings – [the ALJ] makes a 'single, conclusory statement that the individual's allegations have been considered or that the allegations are (or are not) credible.'" Pl.'s Brief [DE-15] at 7.

The Commissioner argues that "Plaintiff fails to show why the ALJ's analysis should not be afforded the great deference due to an ALJ's evaluation of a claimant's complaints." Def.'s Brief [DE-17] at 14. The Commissioner reasons that the ALJ discussed evidence from the record that contradicted Plaintiff's subjective statements, including "2017 consultative examinations for Plaintiff's prior claim, [indicating] she was able to sit, stand, and walk; she exhibited full muscle strength; she could raise her hands overhead, pinch, grasp, and manipulate objects with both hands; and a lumbar x-ray revealed normal findings despite her complaints of thoracolumbar muscle spasm and tenderness"; that [a]s of 2021, Plaintiff was working at a fast food restaurant and she walked with a normal gait"; and that in 2023, "[s]he continued walking with a normal gait . . . , her back was normal, and she did not exhibit shortness of breath." *Id.* at 15.

An ALJ's summary of medical evidence can provide a logical bridge to the ALJ's decision to discount a claimant's subjective complaints where the claimant's medical history shows a clear trend supporting the ALJ's finding or the ALJ specifically points to medical evidence that conflicts with Plaintiff's statements. *See e.g. Busler v. Saul*, No. 2:18-cv-49, 2019 U.S. Dist. LEXIS 223471, at *22-24 (E.D.N.C. Aug. 27, 2019) (affirming the ALJ's decision where the ALJ pointed to medical evidence Plaintiff had normal physical examinations, CT scans, EEGs, and neurological examinations), *adopted by*, 2019 U.S. Dist. LEXIS 222298 (E.D.N.C. Dec. 30, 2019); *Singletary v. Kijakazi*, No. 7:20-cv-229, 2022 U.S. Dist. LEXIS 239340, at *13-14 (E.D.N.C. Aug. 5, 2022) (affirming the ALJ's decision where the ALJ cited "to medical records which consistently show that although Plaintiff does suffer from pain, it has been manageable"), *adopted by*, 2023 U.S. Dist. LEXIS 34194 (E.D.N.C. Mar. 1, 2023).

For example, the undersigned finds that the ALJ's consideration of various records documenting full strength, normal gait and ambulation, as well as Plaintiff's part-time work at

Wendy's and Plaintiff's testimony that she is "on her feet a lot with her daughter" support the ALJ's finding that Plaintiff could stand and walk with a cane at the modified sedentary exertional level set forth in the RFC notwithstanding any subjective claims by Plaintiff to the contrary.

Yet the ALJ's summary of the medical evidence does not provide substantial evidence to discredit all of Plaintiff's subjective limitations. For example, the ALJ noted Plaintiff's testimony that she had "constant headaches from her ex beating her in the head" and was repeatedly unable to attend her current part-time employment due to "constant migraines," among other conditions. Tr. 25. The ALJ found that Plaintiff had "migraine" as a severe medical impairment. Tr. 21. When considering the medical evidence, the ALJ noted a physical consultative examination from 2017 documenting that Plaintiff "reported having a migraine at least twice a week that lasted up to 3 days"; as well as an evaluation from August 2021 diagnosing Plaintiff "with mixed type migraine headaches with nausea, vomiting, and dizziness" and prescribing Topamax. Tr. 26. The ALJ also considered a June 2023 physical examination that documented Plaintiff's complaint that "the Fioricet prescribed for her headaches was too strong and she wanted to change medications." Tr. 27. This summary suggests no explanation as to why the ALJ discounted the limiting effects of Plaintiff's migraines. This omission is particularly problematic as Plaintiff testified that her migraine headaches are one of the primary reasons she is unable to sustain regular hours at her part-time job. *See* Tr. 25.

In sum, the lack of a logical bridge indicating why the ALJ found certain of Plaintiff's subjective complaints inconsistent with the medical and other evidence in the record frustrates meaningful review by this court. *See Radford*, 734 F.3d at 295 ("The record should include a discussion of which evidence the ALJ found credible and why."); *Davis v. Bisignano*, No. 5:24-cv-648, 2026 U.S. Dist. LEXIS 66524, at *11 (E.D.N.C. Mar. 27, 2026) ("[T]he ALJ did not

explain which aspects of [p]laintiff's statements about his symptoms the ALJ found consistent with the record evidence and which the ALJ did not."); *Ruggiero v. Saul*, No. 5:19-cv-546, 2021 U.S. Dist. LEXIS 55640, at *28-29 (E.D.N.C. Mar. 12, 2021) ("Here again, the ALJ does not explain the inconsistencies to which he is referring. The ALJ's lack of explanation and analysis frustrates meaningful review by the court. Based on the descriptions by ALJ, it is impossible to know how he weighed the evidence."), *adopted by*, 2021 U.S. Dist. LEXIS 55316 (E.D.N.C. Mar. 24, 2021).

To be clear, the court expresses no opinion as to whether Plaintiff does or does not require additional or different limitations based upon her subjective limitations or other evidence. The court only seeks to ensure that the relevant evidence is considered and that the decision is fully explained, so as to permit meaningful review by the court if necessary. It is, of course, up to the Commissioner to determine what weight to give all evidence. Accordingly, the undersigned RECOMMENDS remand on this issue.

## VII. CONCLUSION

For the reasons stated above, IT IS RECOMMENDED that Plaintiff's brief [DE-15] be ALLOWED, Defendant's brief [DE-17] be DENIED, and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **September 18, 2026**, to file written objections to this Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by the **earlier of 7 days from the filing of the objections or September 23, 2026**.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 11th day of September, 2026.

Brian S. Meyers
United States Magistrate Judge